# SAND FILTRATION CORPORATION OF AMERICA *v.* COWARDIN.

### CONTRACTS.

Where subcontractors on government work, in order to be relieved from the obligation of their contract with the original contractors, which required them to complete the work and pay to the original contractors 10 per cent of the contract price, turned over their plant to the latter, who at the same time agreed to repay a loan of $8,000 which had been made them by the subcontractors, out of any profit they might realize from the contract; whereupon the original contractors transferred the plant so acquired to other subcontractors, who assumed the payment of the $8,000 debt, and agreed to, and did pay the original contractors $65,000 for the privilege of completing the contract and receiving the entire contract price; and the second subcontractors thereupon completed the work and sustained a loss in excess of $8,000,—it was *held* that the question of the right of the first subcontractors to be repaid the $8,000 depended not upon the question of whether the second subcontractors made a profit out of the contract, but upon the question of whether the original contractors made a profit, and that, as it appeared they did, a fund realized from the final payment by the government on the contract was properly subjected to the payment of the debt; and, upon a review of the circumstances, it was also *held* that the payment of the $8,000 to the first subcontractors should not be subject to a deduction by reason of an alleged inadvertent duplication by them of assets in the transfer of their plant, the question of the alleged mistake not having been raised until nearly three years after the transfer, and the auditor having found that an attempt by the second subcontractors to show that such a mistake had occurred had failed.

No. 1746.   Submitted April 11, 1907.   Decided May 7, 1907.

HEARING on an appeal from a decree by the Supreme Court of the District of Columbia overruling exceptions to a report of the auditor, and directing the distribution of a fund in the hands of a receiver.                              *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a decree directing distribution of a fund in the hands of a receiver.

The necessary facts involved are these:

Samuel T. Cowardin, James F. Bradley, Sydney P. Clay, and Thomas E. Stagg, hereafter called the Cowardin Company, were the successful bidders for the construction of the filtration works for the District of Columbia, and on April 6, 1903, entered into a contract with the United States therefor. The Cowardin Company purchased and contracted for certain building materials, implements, and mules for the commencement of the work, at an aggregate cost of $15,659.70. On May 2, 1903, the Cowardin Company entered into a contract with Robert H. May and George E. and Arthur B. Jekyll for the performance of their contract. May and Jekyll agreed therein to complete the work required by the contract for 90 per cent of the contract price, the remaining 10 per cent to be the profit of the Cowardin Company. They also agreed to reimburse the Cowardin Company for their expenditures aforesaid, to assume responsibility for all supplies already contracted for, to lend them $10,000 in cash, and to place $50,000 in the hands of two trustees to be expended in the purchase of further supplies for the construction work; the trustees holding title thereto as a guaranty that May and Jekyll would perform the contract.

May and Jekyll desired to abandon the performance of the contract on or before August 25, 1903, and one Dean, who afterwards took out the charter of the Sand Filtration Corporation of America, desired to undertake the further execution of the original contract. A new agreement was entered into between the Cowardin Company and May and Jekyll on August 25, 1903, in which it was agreed that the former contract be canceled, and in consideration May and Jekyll sold and delivered to the Cowardin Company all of the supplies, implements, personal property, and so forth, including not only that purchased from the Cowardin Company under the contract of May 25, 1903, but also all that had been purchased by the trustees with

the $50,000 as provided in said contract, the Cowardin Company also agreeing to assume, and to procure the assumption by any parties undertaking the work, of certain liabilities of May and Jekyll as contained in exhibit A thereto attached; and they agreed, further, to convey all of the property on hand as per schedule B to trustees to secure the payment of the aforesaid liabilities in schedule A. The last clause of said contract reads as follows:

"5. Inasmuch as the parties of the second part have heretofore advanced to the parties of the first part the sum of ten thousand dollars ($10,000) under the eighth paragraph of said contract of May 26th, 1903, and there now remains due to the parties hereto of the second part eight thousand dollars ($8,000) thereof, two thousand dollars having been paid thereon, the parties of the first part hereby covenant and agree to repay the parties of the second part, or.to their order, the said sum of eight thousand dollars ($8,000) out of the net profits which may be realized by the parties of the first part from the construction or erection of that portion of said filtration plant which they have contracted with the United States to construct or erect. The said eight thousand dollars ($8,000), if the same shall not sooner be voluntarily paid by the parties of the first part to the parties of the second part shall be reserved and paid out of the 10 per cent of the contract price for said work which will be reserved to the United States; and if the parties of the first part shall not themselves continue said work under their contract with the United States, or shall procure some third party or parties to perform the same, or if the same shall be performed by any person or persons on behalf of the parties hereto of the first part, appropriate provision shall be made for the reservation and payment of said eight thousand dollars ($8,000) to the parties hereto of the second part; it being distinctly understood and hereby declared to be the purpose of this agreement that the repayment of the eight thousand dollars ($8,000) shall be under the contingency that the parties of the first part shall realize a profit under said contract with the United States, and not otherwise; and that if any profit shall be so realized by them it shall

be subjected to the payment of the said eight thousand dollars ($8,000), or so much thereof as said profits will pay and satisfy."

Cowardin Company are the parties of the first part, and May and Jekyll of the second.

On the same day Cowardin Company and Henry B. Dean, trading under name of Dean & Shibley, entered into an agreement for the completion of the contract. This instrument recited the contract of the Cowardin Company with the government for the construction of the filtration plant; the construction plant as set forth in schedule B aforesaid, as then in hands of Cowardin Company; that the Cowardin Company is financially unable to proceed with the work, and is in condition warranting the appointment of a receiver; the contract with May and Jekyll of August 25, 1903, canceling the former contract between them and the Cowardin Company, and the agreement of Dean to assume the obligations of the Cowardin Company thereunder; and that Dean and Shibley were then organizing the filtration corporation, which would undertake the completion of the contract under an arrangement to be made with the receiver when appointed. In consideration of the promises of Dean, the Cowardin Company conveyed to him all of the articles of construction plant specified in the exhibits, together with all that had been acquired from May and Jekyll and the trustees aforesaid. This was subject to the following conditions: First, that one John D. Maclennon, of Cleveland, Ohio, shall be appointed receiver of the Cowardin Company, by a court of competent jurisdiction, which shall authorize the prosecution of the work under this contract, and the employment therein of the Sand Filtration Corporation; second, that a contract shall be made between said receiver and the Sand Filtration Corporation by which the latter shall be employed to complete the contract with the United States, and shall receive all payments under said contract save such as shall be required to pay the costs and expenses of said receivership. The Sand Filtration Corporation shall execute a bond for $150,000 conditioned for the complete performance of the contract with the government,

and the payment of all claims for labor and material. That upon the execution of said contract and bond the title to the construction plant aforesaid shall pass to and be vested in said Sand Filtration Corporation.

The fourth clause of this contract reads as follows:

"Fourth. As consideration for the construction plant by this instrument acquired by the grantee, or the Sand Filtration Company of America, the grantee until the said Sand Filtration Company of America has been organized and substituted, and thereafter the said last-named company, assume and agree to pay all the debts of May and Jekyll specified in schedule B hereto attached and a part hereof, when and as they or it may arrange with the several creditors, and in general to comply with the provisions and conditions of one certain agreement entered into between the grantors and said May and Jekyll, a copy of which is hereto attached and to be read as a part hereof, including among other provisions the payment of the sum of $8,000 to the said May and Jekyll as in said agreement is provided, and the payment of which is also assumed by the said grantee; and also to pay to the receiver the sum of $65,000, to be distributed thereafter as the court may direct, which said sum of $65,000 shall become due and payable as follows: The sum of $10,000 on September 15th, 1903, $15,000 on January 15th, 1904, $10,000 on March 15th, 1904, $10,000 on May 15th, 1904, and the remaining $20,000 on the completion of the said filtration plant and at the time of the final payment thereon by the United States; and the said grantee, and the Sand Filtration Company of America when said company shall have been substituted for the said grantee, shall also pay to the grantors or their attorney for them the sum of $3,517.50, said sum having been paid by the grantors on account of pay roll and other expenses since the commencement of negotiation between the parties hereto, and, further, to pay all other expenses and obligations necessary to be incurred between the date of this contract and the execution of the formal contract with the receiver hereafter to be appointed for the grantors.

"It is further agreed that all expenses, costs, and fees of re-

·ceivership and of the cause in which the receiver is appointed are to be borne by the grantors, or to be defrayed by the receiver ·out of the funds which may come into his hands for them."

The provisions in regard to the receiver and the contract with him were necessary to the protection of the filtration corporation, because there could be no direct assignment of a government contract. It appears that all of the foregoing conditions were performed, and the property delivered to the filtration corporation, which completed the work required by the contract.

On said 25th day of August, 1903, a supplemental agreement ·was signed by the Cowardin Company authorizing the receiver ·to deduct from the money received from the government the said sums of $65,000 and $8,000, and pay the same directly to the ·said Cowardin Company, instead of first paying the same to the filtration company and receiving the same back from it.

The proceeding leading up to the decree appealed from·was begun by a petition filed by the Cowardin Company on March ·13, 1906, for a rule on the receiver. This petition recited the facts of the case generally, and alleged that, of the last payment made by the government to the receiver on the completion of the contract, there remained in the hands of the receiver the ·sum of $18,000, which he withheld at the demand of the Sand Filtration Company, and an order for its payment was prayed. The several parties in interest answered the petition. · The Sand ·Filtration Corporation claimed that the sum of $1,190 should be ·retained from the money due Cowardin Company because of a ·mistake of that amount in the schedule of property delivered, which they called a "duplication of assets." It denied liability for the $8,000 to May and Jekyll because no profits had been realized from the contract; and ·that the contract had ·been com·pleted by the filtration company at a loss of $100,000. ·

An interlocutory order was passed April 3, 1906, requiring the receiver to pay· over to the Cowardin Company $8,000 ·out ·of the $10,000 fund, reserving the sum of $2,000 until the coming in of the auditor's report. And the court, being further of the opinion that the Cowardin Company ·had made a profit under their contract with the· government, within the intent and

meaning of the contract between them and May and Jekyll, but being unable to determine from the then state of the record whether there was an error of $1,190 arising from a duplication in the schedule of the assets of May and Jekyll turned over by them to the Cowardin Company, and by the latter to the Sand Filtration Corporation, the matter of that determination was referred to the auditor, with power to take testimony, etc.

Testimony having been taken before the auditor, the latter reported at length, denying the claim of the duplication of said assets.

The Sand Filtration Corporation excepted to the auditor's report. These exceptions were overruled and the report confirmed on October 8, 1906; and a final decree was passed directing the receiver to pay to May and Jekyll the sum of $8,000, and to the Cowardin Company the said sum of $2,000 reserved by the order of reference to the auditor. The Sand Filtration Corporation has appealed from the final decree.

*Mr. A. S. Worthington, Mr. Charles L. Frailey* and *Mr. Frank R. Lawrence* for the appellant.

*Mr. J. J. Darlington* for the appellees Cowardin, Bradley, Clay, and Stagg.

*Mr. Charles Cowles Tucker, Mr. J. Miller Kenyon,* and *Mr. R. S. Huidekoper* for the appellees May and Jekyll.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

The auditor's report contains a careful review of the testimony produced before him, relating to the alleged duplication of assets in the transfer of construction plant and material from the Cowardin Company and May and Jekyll to the Sand Filtration Corporation, and a well-reasoned conclusion against the contention of the latter.

It appears that schedules were carefully prepared, and re-

ferred to in the several contracts, showing each item of construction plant and material that was finally delivered to the Sand Filtration Corporation; and that the same were verified by the latter's financial expert. The books and accounts of all parties were open to inspection, and the mistake, if it occurred, passed unnoticed. No question in respect of it seems to have been raised until nearly three years thereafter, when the time for final settlement arrived. Under these conditions the filtration corporation assumed a heavy burden in attempting to show that a mistake had been made in some one of the items of the schedules. Without adding anything to the auditor's discussion of the evidence, we agree with him that the showing made was insufficient, and with the court in confirming his report.

As regards the $8,000 payment ordered to be made to May and Jekyll, the contention is, first, that the obligation of the contract of the appellant with the Cowardin Company was to pay said sum in the event only that the appellant should make a profit in carrying out the contract. In this connection, it is conceded that the appellant, instead of making a profit, actually sustained a loss considerably greater than that amount.

The second contention is, in case of the denial of the first, that no profit was made in the transaction by the Cowardin Company. The contract by the Cowardin Company, which the appellants assumed, with Jekyll and May, was to pay them the $8,000 out of the net profits which the Cowardin Company might realize from the construction of that portion of the filtration works which they had contracted for with the United States. In contemplation of that contract, the Filtration Corporation, on the same day, assumed the performance of the contract of the Cowardin Company, and, in consideration thereof and of the construction plant derived from May and Jekyll through the Cowardin Company, agreed to pay the said sum of $8,000 to May and Jekyll, as well as the sum of $65,000 for the said plant which was then and there received. There was no condition in this contract making that payment dependent upon the making of a profit by the filtration company in the transaction; nor is there any language used from which such a

condition can be inferred. The fact that the filtration company undertook the completion of the contract at all indicates its certain expectation of profit in the transaction; and if it feared that the expected profit would not exceed the $8,000 payment assumed, it was its duty to protect itself in that particular by some express stipulation to that effect. Having failed to so provide, May and Jekyll, who furnished a consideration for the undertaking, and have also sustained a substantial loss, cannot be made to bear the consequences of the failure of those expectations.

The court was right also in holding that the Cowardin Company derived net profits of more than $8,000 from their contract with the government. May and Jekyll not only repaid them every dollar of their original outlay,—$15,000, in round numbers,—but also turned over to them $50,000 worth of additional construction plant and material that had been purchased by them. In the new contract with the filtration corporation, the latter assumed the complete performance of the government contract for the money payable thereunder, and made performance secure by the exacted bond in the sum of $150,-000. The filtration corporation, in order to secure this contract, took over the plant which had been relinquished by May and Jekyll to the Cowardin Company at the agreed price of $65,000, payments of which in instalments were required to be deducted from the government's payments by the receiver and paid to the Cowardin Company. Notwithstanding the losses of May and Jekyll on the one hand, and the filtration corporation on the other, the Cowardin Company realized a net profit of say $65,000. Without one dollar of actual expenditure in the performance of their contract with the government, so far as the record shows, they secured its performance by others, and received the sum of $65,000 for the plant, mainly derived from May and Jekyll, who gave it up in order to be released from their first contract.

Had the Cowardin Company not contracted the plant to the filtration corporation, but, after securing the final performance of the government contract by the latter, had sold the plant to

others, the amount received therefor would have been a net gain. Its character as gain or net profit was not changed by selling the plant to the filtration corporation. Having made this net profit, the liability of the Cowardin Company, assumed by the filtration corporation, became fixed and enforceable.

The court rendered the proper decree under the facts presented by the record, and it will therefore be affirmed, with costs. It is so ordered.                          *Affirmed.*

An appeal by the appellant to the Supreme Court of the United States was allowed on May 21, 1907.